IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RAY WOODS,**<br><br>      **Plaintiff,**<br><br>v.<br><br>**MR. SULLIVAN, MR. GALLAWAY, DR. ALDRIDGE, and WEXFORD, CO.,**<br><br>      **Defendants.** | **Case No. 23-cv-2688-NJR** |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Ray Woods, a pre-trial detainee who is currently housed at the Cook County Detention Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while he was in the custody of the Illinois Department of Corrections ("IDOC") at Shawnee Correctional Center ("Shawnee"). Woods alleges he received inadequate treatment for his dental issues and that he was subjected to excessive force.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

In his Complaint, Woods makes the following allegations: While incarcerated at Shawnee in 2022, he developed severe tooth pain. He was examined by healthcare staff and scheduled for a tooth extraction (Doc. 1, p. 7). On October 5, 2022, Woods met with the dentist, Dr. Aldridge, an employee of Wexford. Woods informed the dentist that he had been scheduled for two months to be seen for an extraction and that his pain had worsened due to the lengthy wait (*Id*.). The dentist attempted to pull Woods's tooth but tore into Woods's gum and chipped the tooth, causing Woods unbearable pain (*Id*. at p. 8). The dentist tried numbing the area and again tried to extract the tooth, but the pain was still unbearable (*Id*.). The dentist refused to finish the procedure, citing Woods's inability to endure the pain (*Id*.). The dentist's initial attempts to extract the tooth left Woods with escalating pain, but the dentist failed to prescribe any pain medication after the procedure (*Id*.). Woods suffered with pain in his face, neck, and head after the procedure (*Id*.).

Weeks after the procedure, Woods was found unresponsive and unconscious in his cell (*Id*. at p. 9). Woods fails to indicate when this event occurred, although an attached grievance indicates that it was on November 12, 2022 (*Id*. at p. 18). Woods believes that he passed out due to the severe pain he experienced after the attempted tooth extraction (*Id*. at p. 9). Defendant Sullivan "brutally" kicked Woods in the legs and feet in order to rouse him (*Id*. at p. 9-10). He was taken to the healthcare unit in his thermal underwear. He was treated by healthcare staff and provided an icepack for the bruises he received as a result of Sullivan kicking him. After being examined by medical staff, "security staff"

directed Woods to walk back to his housing unit in the snow, wearing only his thermal underwear (*Id.*). Woods described the walk back to his housing unit as "humiliating and dehumanizing" (*Id.* at p. 10).

## Preliminary Dismissals

Although Woods includes allegations against Warden Gallaway and Wexford, he fails to state a viable claim against either defendant. As to Warden Gallaway, Woods alleges that he denied every grievance written by Woods, that Gallaway "rubber stamped" the grievance officer's findings, and that the grievances were not properly investigated (Doc. 1, p. 11). But the warden cannot be liable for simply denying Woods's grievances. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007). Further, there are no due process rights or First Amendment protections associated with a prison grievance process. *Owens,* 635 F.3d at 953–54 ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause...."); *Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."). Thus, Woods fails to state a claim regarding his allegations that Gallaway improperly denied or failed to properly investigate his grievances. Any potential claim related to the handling of Woods's grievances are **DISMISSED without prejudice**.

3

Woods also fails to state a claim against Wexford. Woods alleges that Wexford is in charge of all medical care at Shawnee and thus is liable for any negligence committed by medical staff at the prison. But Wexford can only be held liable under [Section] 1983 if "the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself." *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). Woods fails to point to any such policy or practice that caused the deliberate indifference in the care provided to Woods. Thus, any claim against Wexford is also **DISMISSED without prejudice**.

Finally, to the extent Woods alleges that "security staff" inappropriately made him walk back to his cellhouse in only his underwear, Woods has not identified any individual with particularity. Although Woods may bring claims against identified John Doe Defendants (*i.e.* John Doe #1, John Doe #2, *etc.*), he includes a generic group of "security staff". This claim is too generic to survive threshold review as it does not describe the unknown staff members or even state the number of them. Thus, to the extent he alleges claims against "security staff," those claims are **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

**Count 1:**   Eighth Amendment deliberate indifference claim against Dr. Aldridge for the improper tooth extraction attempt and lack of pain medication provided during and after the extraction.

4

> **Count 2:** Illinois medical malpractice claim against Dr. Aldridge for the improper tooth extraction attempt and lack of pain medication provided during and after the extraction.
>
> **Count 3:** Eighth Amendment excessive force claim against Sullivan for kicking Woods while he was unconscious.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

At this stage, Woods states a viable claim in Count 1 against Dr. Aldridge for the treatment provided for his tooth pain. He also states a claim against Dr. Aldridge in Count 2 for medical malpractice under Illinois state law. Woods may proceed with the claim in Count 2 at this time but is reminded that he must comply with the requirements of the Illinois Healing Arts Malpractice statute by the summary judgment deadline or face dismissal of the claim. *See* 735 ILCS 5/2-622 *et. seq*; *see also Young v. United States*, 942 F.3d 349, 351-52 (7th Cir. 2019).

Count 3 regarding the alleged use of excessive force by Defendant Sullivan is unrelated to Woods's dental claims. Accordingly, consistent with *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007), and Federal Rules of Civil Procedure 18 and 20, the Court will sever Count 3 and will open a new case with a newly assigned case number. Woods will

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

then have an opportunity to decide whether he wants to pursue the separate claim against Defendant Sullivan.

## Disposition

For the reasons stated above, Count 3 against Sullivan is severed into a new case. In the new case, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The Complaint (Doc 1); and
- The motion to proceed IFP (Doc. 2).

The only claims remaining in this case are Counts 1 and 2 against Dr. Aldridge for the treatment of Woods's tooth pain. Warden Gallaway and Wexford are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendant Dr. Aldridge: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendant's place of employment as identified by Woods. If the defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the defendant can no longer be found at the work address provided by Woods, the employer shall furnish the Clerk with the defendant's current work address, or, if not

known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Woods, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Woods is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **seven days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED:  October 23, 2023

_____
**NANCY J. ROSENSTENGEL**
Chief U.S. District Judge

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendant of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendant will enter his appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendant's Answer, but it is entirely possible that it will take **90 days** or more. When the defendant has filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendant before filing any motions, to give the defendant notice and an opportunity to respond to those motions. Motions filed before defendant's counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**